**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROMALA STONE, INC., | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :   CIVIL ACTION NO. |
| | :   1:04-CV-2307-RWS |
| HOME DEPOT U.S.A., INC., | : |
| | : |
|     Defendant. | : |

<u>ORDER</u>

This case is before the Court for consideration of the Report and Recommendation of Special Master Gale R. Peterson [153]; Defendant's Motion for Partial Summary Judgment [86]; Defendant's Motion to Strike Declaration of Farnoush Ahadzadeh [102]; and Defendant's Motion for Leave to File Notice of Supplemental Authority [149]. After reviewing the entire record, the Court enters the following order. As an initial matter, Defendant's Motion to File Notice of Supplemental Authority [149] is **GRANTED**.

**<u>Defendant's Motion to Strike Declaration of Farnoush Ahadzadeh</u>**

On December 14, 2005, Plaintiff filed the Declaration of Farnoush Ahadzadeh [98] in response to Defendant's Motion for Partial Summary Judgment. Claim construction discovery ended October 10, 2005. (June 23, 2005 Order [74]

at ¶ 11.) Final claim construction briefs were due December 1, 2005. (Id at ¶ 13). Prior to the filing of his declaration, Mr. Ahadzadeh had not been identified by Plaintiff and was not designated by Plaintiff as an expert. Local Patent Rule 6.3 (b)(4) requires a party to disclose in the Joint Claim Construction Statement whether the party intends to call an expert as a witness at the claim construction hearing and to provide a summary of any opinions to be offered by the expert.

Based on the scheduling order and the provisions of the Local Patent Rules cited above, Defendant asserts that Ahadzadeh's declaration is not timely for consideration on the issue of claim construction. In response, Plaintiff argues that Ahadzadeh's declaration is offered in response to Defendant's invalidity contentions in its Motion for Partial Summary Judgment. Thus, Plaintiff suggests that Local Patent Rule 7.1 regarding disclosure of experts "[f]or issues other than claim construction" governed its disclosure obligation. The Court agrees with Defendant that Plaintiff seeks to introduce what is clearly an expert opinion on the issue of claim construction under the guise of an opinion opposing partial summary judgment. The Court finds that the declaration is not timely for consideration of claim construction issues and **GRANTS** Defendant's Motion to Strike [102] as it relates to claim construction issues.

**Markman Order**

By order [138] entered June 15, 2006, this case was referred to Gale R. Peterson, as Special Master, for issues relating to claim construction. Following briefing of the issues by the parties and a hearing, Mr. Peterson submitted his Report and Recommendation (the "R&R") [153] to the Court on April 3, 2007. Following submission of the R&R to the Court, each of the parties filed objections [154 and 155] to the R&R, as well as responses [156 and 157] to the opposing party's objections. As required by Federal Rule of Civil Procedure 53(g)(4) the Court has conducted a *de novo* review of all of the recommended findings to which objections have been filed. Except as set out below, the Court adopts the findings and conclusions of the R&R. Specifically, the Court adopts the proposed constructions of all terms and phrases as recommended by the R&R, except for the following phrases: "average consumer," "suitable for installation by the average consumer," "can be installed by the average consumer," and "price affordable to an average consumer" (the "'average consumer' phrases").

In defining "average consumer" in the "average consumer" phrases, the R&R suggests that because the claimed method in the patent is a "method for providing," the focus of the claim is "the objective characteristics of what is 'provided' rather than the characteristics of an actual purchaser." (R&R at 36)

3

Based on this conclusion, the R&R proposes that these terms be construed as follows:

> (1) "average consumer" to mean one without special training in stonecutting;
>
> (2) "price affordable to an average consumer" to mean that a "pre cut" "non man made" "stone top" in accordance with other terms in the claims does not require a purchaser to incur the additional costs of engaging the services of someone skilled in stonecutting in order to install the top;
>
> (3) "suitable for installation by the average consumer" and "can be installed by the average consumer" to mean a "pre cut" "non man made" "stone top" in accordance with other terms in the claims that is "non custom ordered" or "not custom ordered" also in accordance with other terms in the claims, and that product may be installed without requiring the services of someone with special training in stone-cutting.

(R&R at 46.) The problem with this conclusion is that, in defining what is "provided," the patent claim utilizes the characteristics of the purchaser. That is, the counter top must be one that is "pre cut non man made" stone <u>and</u> is "affordable to an average consumer" <u>and</u> is capable of being installed "by the average consumer." ('973 Patent, col. 5, ll 27-28, 32.)

The Federal Circuit has instructed that "claim language should not be treated as meaningless," and "claims are interpreted with an eye toward giving effect to all terms in a claim." <u>Bicon, Inc. v. Straumann Company</u>, 441 F.3d 945, 950, 951

4

(Fed. Cir. 2006). The construction of these terms in the R&R violates this principle by attributing no meaning to "average consumer" beyond what is otherwise stated in the claim: "a pre cut non man made, non custom ordered stone top." ('973 Patent, col. 5, ll. 27-28.) Plaintiff recognized something more was required to define "average consumer" in its proposed claim construction in which it proposed to define the average consumer, not in terms of the pre cut nature of the top, but in terms of the characteristics of the consumer. Plaintiff's proposed construction of "average consumer" was: "an individual that purchases supplies for a home improvement task from a retail outlet and performs the home improvement task himself or herself, regardless of whether the individual has any professional training in that task." (Joint Claim Construction Statement at A1-1.)

Consistent with the foregoing principles, the Court rejects the construction of "average consumer" in the R&R. The Court finds that Plaintiff's construction of the term "average consumer," with one exception, is consistent with the specification and does not treat a clearly stated characteristic as superfluous. The use of the word "professional" in Plaintiff's proposed definition is not warranted. First, this is a term that may require further definition. Second, the Court finds no support for imposing an additional limitation on the type of training. After reviewing the evidence, the Court concludes that the patent is intended to include

5

tops that can be installed by consumers with no training in counter top installation. The claim provides a method for providing a top that the typical "do-it-yourself homeowner" would be able to install. ('973 Patent, col. 2, ll. 18-19.)  Therefore, the term "average consumer" shall mean "an individual that purchases supplies for a home improvement task from a retail outlet and performs the home improvement task himself or herself, regardless of whether the individual has any training in that task."

The Court finds that the proposed constructions in the R&R for "suitable for installation by the average consumer" and "can be installed by the average consumer" are appropriate when the new construction of "average consumer" is substituted therein.  Thus, those terms would be construed as follows:

> (1) "suitable for installation by the average consumer" to mean capable of being installed by an individual that purchases supplies for a home improvement task from a retail outlet and performs the home improvement task himself or herself, regardless of whether the individual has any training in that task;
>
> (2) "can be installed by the average consumer" to mean capable of being installed by an individual that purchases supplies for a home improvement task from a retail outlet and performs the home improvement task himself or herself, regardless of whether the individual has any training in that task.

As with the foregoing phrases, the Court finds that the construction proposed by the R&R for "price affordable to an average consumer" fails to give

6

meaning to all of the claim terms. As an initial matter, the Court notes that this limitation is found in the preambles to claims 1 and 9. The R&R treated the phrase as a limitation, and Plaintiff filed no objection to that conclusion.

Although the issue has not been specifically raised, the Court finds that these phrases within the preambles do limit the scope of the respective claims. There is no litmus test for determining whether to treat a preamble as limiting the scope of the patent claims. Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002). Rather, "a claim preamble has the import that the claim as a whole suggests for it." Pitney Bowes, Inc. v. Hewlett Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999). Thus, "'whether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent.'" Bicon, Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006) (quoting Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 831 (Fed. Cir. 2003)); see also Catalina Mktg., 289 F.3d at 808 ("Whether to treat a preamble as a limitation is a determination 'resolved on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim.'" (quoting Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989))).

7

In general, "[i]f the body of the claim 'sets out the complete invention,' the preamble is not ordinarily treated as limiting the scope of the claim." Bicon, 441 F.3d at 952. Similarly, "a preamble simply stating the intended use or purpose of the invention" or "merely extolling benefits or features of the claimed invention" will usually not limit the scope of the claim. Catalina Mktg., 289 F.3d at 809; see also On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1343 (Fed. Cir. 2006) ("[T]he preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim."); Boehringer Ingelheim v. Schering-Plough Corp., 320 F.3d 1339, 1345 (Fed. Cir. 2003) ("An intended use or purpose usually will not limit the scope of the claim because such statements usually do no more than define a context in which the invention operates.").

Conversely, a preamble will be regarded as limiting if it is "'necessary to give life, meaning, and vitality' to the claim." Catalina Mktg., 289 F.3d at 808 (quoting Pitney Bowes, 182 F.3d at 1305). "That is, if the claim drafter 'chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects.'" Bicon, 441 F.3d at 952 (quoting Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp., 55 F.3d 615, 620 (Fed. Cir. 1995)) (emphasis in

8

AO 72A
(Rev.8/82)

original). In such situations, "there is no meaningful distinction to be drawn between the claim preamble and the rest of the claim, for only together do they comprise the 'claim.'" Pitney Bowes, 182 F.3d at 1305.

The Federal Circuit has identified several situations in which the preamble will be deemed a limitation. For example, the preamble will generally constitute a limitation where it "recites essential structure that is important to the invention," Catalina Mktg., 289 F.3d at 808, or where it "provides antecedents for ensuing claim terms." Boehringer, 320 F.3d at 1345; see also Pitney Bowes, 182 F.3d at 1309 (finding term in preamble limiting where it is "intimately meshed with the ensuing language in the claim" and where claim terms "[could] only be understood in the context of the preamble statement"). Additionally, "preamble language will limit the claim if it recites not merely a context in which the invention may be used, but the essence of the invention without which performance of the recited steps is nothing more than an academic exercise." Boehringer, 320 F.3d at 1345. Finally, and most relevant for purposes of the instant patent, the Federal Circuit has recognized that "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention." Catalina Mktg., 289 F.3d at 808-09.

9

The R&R provides an excellent review of the prosecution history of the patent-in-suit. The patent application went through numerous revisions from its original filing on November 8, 1999 until it issued on July 22, 2003. "The finally issued claims in the '973 Patent were presented following a telephone interview with the examiner." (R&R at 27.) Application claims 55 and 66 that became patent claims 1 and 9 were amended as set out in the R&R. (R&R at 27-28.) Included among the amendments to these claims was the addition of the following language in the preambles to the claims:

> to enable assembly line production and sale of the top at a price affordable to an average consumer [claim 55];
>
> The method enabling assembly line production of the top and sale of the top at a price affordable to the average consumer [claim 66].

(R&R at 27-28.) After these amendments, the patent finally issued. The Court finds that the language was used to help distinguish the claimed invention from the prior art and should be treated as a limitation.

Unlike the earlier phrases, the meaning of "price affordable to an average consumer" is not clear when the construction of "average consumer" is inserted. The R&R defines affordability based upon the absence of the need for a stone cutter. As noted in regard to the earlier phrases, this limitation is already explicitly stated in the patent. To impose the "no stone cutter" limitation through this phrase

10

makes this limitation superfluous. Therefore, the Court concludes that further definition is required.

The meaning of this phrases is not clearly discernable from its words. An individual that purchases supplies for a home improvement task from a retail outlet and performs the home improvement task himself or herself, regardless of whether the individual has any training in that task can be an individual from any economic class. The Court finds nothing in the intrinsic or extrinsic evidence that provides an objective standard from which one could determine whether the product is affordable to such a consumer. A person reading the patent is not able to discern the scope of the limitation.

This phrase is similar to the phrase "aesthetically pleasing" that was addressed in Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342 (Fed. Cir. 2005). Datamize involved a patent for an electronic kiosk system. The claim-at-issue recited a method that included the step of providing interface screen element types with an "aesthetically pleasing" look and feel. Id. at 1345. The district court concluded that the phrase "aesthetically pleasing" was "hopelessly indefinite" and granted a motion for summary judgment of invalidity. Id. at 1347.

The Federal Circuit first looked at the phrase "aesthetically pleasing" in context. However, it found that the context did "not suggest or provide any

11

meaningful definition for the phrase 'aesthetically pleasing' itself. Merely understanding that 'aesthetically pleasing' relates to the look and feel of interface screens, or more specifically to the aggregate layout of elements on interface screens, fails to provide one of ordinary skill in the art with any way to determine whether an interface screen is 'aesthetically pleasing.'" Id. at 1349. The Court found that the patent holder "offered no objective definition identifying a standard for determining when an interface screen is 'aesthetically pleasing.' In the absence of a workable objective standard, 'aesthetically pleasing' does not just include a subjective element, it is completely dependent on a person's subjective opinion. . . . The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention. Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention . . . .[A] claim term, to be definite, requires an objective anchor." Id. at 1350 (internal citation omitted).

The Court finds that "a price affordable to an average consumer" suffers from the same failings as "aesthetically pleasing." Assuming that "a price affordable to an average consumer" means something more than a pre cut stone top, no objective standard is provided by which a person reading the patent could determine if he were infringing the patent.

12

Based on the foregoing, the Court finds that the phrase "a price affordable to an average consumer" is not amenable to construction.

**Defendant's Motion for Partial Summary Judgment**

Defendant moves for partial summary judgment of invalidity because the following phrases are indefinite as a matter of law: "average consumer," "price affordable to [the] average consumer," "suitable for installation by the average consumer," and "can be installed by the average consumer." Each of these phrases appears in independent claims 1 and 9 of the '973 Patent.

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a

13

genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The Defendant contends that each of the phrases is indefinite as a matter of law because they do not include an objective standard that allows the public to determine the scope of the claimed invention.  (Defendant's brief [86] at 10.)  In opposition, Plaintiff asserts that the motion is premature because discovery has not been completed.  Further, Plaintiff contends that Defendant is required to prove invalidity by clear and convincing evidence which includes  testimony from one of ordinary skill in the art.  Finally, Plaintiff argues that Defendant's motion fails because the claim terms are not indefinite.

First, the Court finds that the issue of invalidity based upon indefiniteness can be addressed without the necessity of requiring additional discovery.  "Claim construction is a question of law," and "[s]imilarly, indefiniteness is a question of law."  IPXL Holdings, LLC v. Amazon.com, Inc., 430 F.3d 1377, 1380 (Fed. Cir. 2005); Glaxo Grp. Ltd. v. Apotex, Inc., 376 F.3d 1339, 1345 (Fed. Cir. 2004).  The Federal Circuit Court of Appeals has rejected the argument that claim construction turns on underlying factual disputes and has reaffirmed its holding that claim construction is a purely legal determination.  See Phillips v. AWH Corp., 415 F.3d 1303, 1328 (Fed. Cir. 2005) (*en banc*) (stating that "[a]fter consideration of the

14

matter," the Court decided to "leave undisturbed our prior *en banc* decision in Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448 (Fed. Cir. 1998)]"); Exxon Res. and Eng'g Co. v. United States, 265 F.3d 1371, 1376 (Fed. Cir. 2001) (rejecting argument that indefiniteness turned on an underlying factual dispute that should not have been resolved as a matter of law); Cybor Corp., 138 F.3d at 1456 (*en banc*) (noting that "the Supreme Court's opinion [in Markman v. Westview Instr., Inc., 517 U.S. 370 (1996)] conclusively and repeatedly states that claim construction is purely legal"; affirming that claim construction is "a purely legal question"; and declining to accord deference to "any allegedly fact-based questions relating to claim construction"); see also Phillips, 415 F.3d at 1330, 1332 (Mayer, C.J., dissenting) noting the *en banc* majority's "persistence in adhering" to the holding that "claim construction is a matter of law devoid of any factual component" and "that claim construction is a purely legal determination, unaffected by underlying facts").

Turning to Plaintiff's contention that the challenged terms are not indefinite, the Court agrees that, with the exception of "price affordable to [the] average consumer," the claim terms are not indefinite. In the Markman section of this order, the Court has construed the other terms and concludes that under the stated

15

constructions, the terms are not indefinite. However, the Court concludes that "price affordable to [the] average consumer" is indefinite.

Thus, as to this phrase, the Court turns to the questions of whether the parties should be permitted additional discovery before the Court rules on the motion and whether Defendant has shown invalidity by clear and convincing evidence, particularly in light of the absence of an opinion from one of ordinary skill in the art.

Patent claims must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2.

> According to the Supreme Court, the statutory requirement of particularity and distinctness in claims is not only when the claims clearly distinguish what is claimed from what went before in the art and clearly circumscribed what is foreclosed from future enterprise. The definiteness requirement, however, does not compel absolute clarity. Only claims not amenable to construction or insolubly ambiguous are indefinite. Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning. Furthermore, a difficult issue of claim construction does not *ipso facto* result in a holding of indefiniteness. If the meaning of the claim is discernable, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds. In this regard it is important to note that an issued patent is entitled to a statutory presumption of validity. By finding claims indefinite only if reasonable efforts at claim construction prove futile, we

16

> accord respect to the statutory presumption of validity, and
> we protect the inventive contribution of patentees, even when
> the drafting of their patent has been less than ideal. In this
> way we also follow the requirement that clear and convincing
> evidence be shown to invalidate a patent.

Datamize, 417 F.3d at 1347-48 (internal citations and quotations omitted).

The Court finds that Defendant has shown invalidity by clear and convincing evidence. Although Farnoush Ahadzadeh's declaration was not considered for claim construction, the Court has considered it in opposition to the motion for partial summary judgment. As it relates to the phrase "price affordable to the average consumer," the declaration offers little help. Ahadzadeh states: "the phrase 'price affordable to an average consumer' refers to the price that the pre-fabricated product is sold for at the retail outlet." (Ahadzadeh's declaration at paragraph 15.) This statement gives no indication of what that "price" would be. It would be nonsensical to conclude that "price affordable to the average consumer" is any price that a retail outlet chooses to charge.

Aside from his stated definition, Ahadzadeh also mentions price several times in his declaration: "The '973 Patent demonstrates a much less expensive way for the consumer to obtain a natural granite counter top" (Id at ¶ 11), "at a fraction of the cost of custom ordering the same product" (Id), "offers the consumer both a much lower cost and less time from purchase to installation" (Id at ¶ 16), "The

17

purpose of the invention is to provide the consumer with a much less expensive . . . option" (Id at ¶ 19), "at much lower cost than that of a custom ordered, fabricated product" (Id at 21), and "much less cost than custom ordering" (Id at 23). The only clarification Ahadzadeh gives to determining an affordable price is that it be less than a custom ordered top. This interpretation is adopted by Plaintiff in its Response to the Motion for Partial Summary Judgment: "it is obvious from the written description that this phrase is intended to be interpreted as the price that a pre-fabricated natural stone counter top would be made available in a retail store, as opposed to the price to custom order a natural stone counter top." (Plaintiff's Response [95]at 21.) This construction offers no objective basis for determining whether such a price is affordable to an average consumer. Thus, it ignores the plainly stated limitation in the claims. As stated above, the Court finds that the phrase is indefinite.

Based on the foregoing, the Court find that independent claims 1 and 9 are invalid due to indefiniteness. Therefore, Defendant's motion for partial summary judgement [86] is hereby **GRANTED**.

**Conclusion**

Based on the foregoing, the Report and Recommendation of Special Master Gale R. Peterson [153] is **ADOPTED IN PART** and **REJECTED IN PART**;

18

Defendant's Motion for Partial Summary Judgment [86] is **GRANTED**; Defendant's Motion to Strike Declaration of Farnoush Ahadzadeh [102] is **GRANTED IN PART** and **DENIED IN PART**; and Defendant's Motion for Leave to File Notice of Supplemental Authority [149] is **GRANTED.**

    SO ORDERED, this  28th  day of September, 2007.

                                                    RICHARD W. STORY
                                                    UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)